U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 1 2013

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SHELIA MOORE,                        §
                                     §
          Plaintiff,                 §
                                     §
VS.                                  §   NO. 4:12-CV-624-A
                                     §
CITY OF GRAND PRAIRIE,               §
ET AL.,                              §
                                     §
          Defendants.                §

MEMORANDUM OPINION
and
ORDER

Before the court for decision are the motions of defendants
Officer Rodermund ("Rodermund") and City of Arlington
("Arlington") to dismiss for failure to state a claim upon which
relief may be granted, the claims asserted against them by
plaintiff, Shelia Moore.  After having considered plaintiff's
second amended complaint, the motions, plaintiff's response, and
applicable legal authorities, the court has concluded that
Rodermund's motion should be granted, and that Arlington's motion
should be denied, except that plaintiff's claim seeking punitive
damages against Arlington is barred.

I.

Background

Plaintiff initiated this action by the filing of an original complaint, and has twice amended her complaint, with her second amended complaint ("complaint") being filed on February 21, 2013.[1]  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against Rodermund, Arlington, the City of Grand Prairie ("Grand Prairie"), Officer Alex Chasteen ("Chasteen"), Officer Tracy Hinson ("Hinson"), Officer Timothy Paulson ("Paulson"), and Officer Jane Doe ("Doe").

The complaint makes the following factual allegations relevant to plaintiff's claims against Rodermund and Arlington:

Plaintiff is a forty-year-old African-American woman who had no arrest or criminal record beyond traffic violations prior to the events described in the complaint.  Plaintiff has been employed by a national bank for six years, and had worked in law enforcement for seven years before working at the bank.  She was previously known by her married name, Shelia Moore Banks.

On November 26, 2011, a "Probable Cause Warrant" was issued

---

[1] Defendants Rodermund and Arlington filed their motions on December 12 and 13, 2012, respectively, in response to plaintiff's first amended complaint, which was filed on November 30, 2012. After Rodermund and Arlington filed their motions, plaintiff sought leave of court to file her second amended complaint, which the court granted on the condition that defendants' motions would remain in effect and would be treated as being directed to the allegations of the second amended complaint.

for plaintiff's arrest by Judge Chad Bull, Magistrate of the
Municipal Court of Grand Prairie, and carried warrant no.
110026132.  The warrant called for plaintiff's arrest under
section 29.02 of the Texas Penal Code, which involves the offense
of robbery and states that the offense is a felony of the second
degree.  A bond amount of $50,000 was set for the warrant, and
the warrant was issued based on the sworn statement of Chasteen.
In the affidavit, Chasteen attested that he believed plaintiff
committed the offense of robbery, and stated reasons for such
belief.

On April 26, 2012, plaintiff left work for her lunch break,
purchased lunch at a restaurant, and drove back toward her place
of employment.  An Arlington Police Department patrol car driven
by Rodermund began pursuing plaintiff's vehicle "in an aggressive
manner," accelerating toward plaintiff, "almost hitting her
vehicle," and "repeatedly pull[ing] alongside" plaintiff's
vehicle, causing plaintiff to feel intimidated.  Compl. at 7.
Plaintiff arrived at her place of employment and parked in the
parking lot, and Rodermund pulled his patrol car behind
plaintiff's vehicle, trapping her car between parked vehicles.
Rodermund approached plaintiff's vehicle, and asked, "Are you
Shelia Banks?"  He then asked plaintiff for her drivers license,
which plaintiff provided.  Plaintiff was wearing her bank

employee identification at the time. Rodermund returned to the
patrol car after obtaining plaintiff's license, remained in the
car for several minutes, and then approached plaintiff and
stated, "Get out of the car." Id. at 8. Rodermund informed
plaintiff that there was a warrant for her arrest, and arrested
plaintiff at that time. Rodermund placed plaintiff in handcuffs
and forced plaintiff to sit on the metal railing of the patrol
car, causing physical pain. Plaintiff informed Rodermund that he
had the wrong person and that she had not done anything wrong,
and asked Rodermund what offense she was being arrested for, to
which Rodermund responded, "Robbery." Id. Plaintiff attempted
to summon the security guard at her workplace, but Rodermund
waved the security guard away.

Two additional Arlington police officers arrived, one of
whom was a white male and the other a white female. Plaintiff
informed the officers that she had not committed any crimes and
that she should not be arrested. The male officer told
plaintiff, "There is nothing I can do. [Rodermund] is the
arresting officer," and the female officer stated, "He's the
arresting officer. He's in charge." Id. Plaintiff notified
officers that she was "in physical pain because of her placement
on the metal railing of the patrol car and asked to reposition
herself," but the officers did not permit her to do so. Id.

4

Rodermund informed plaintiff that she would be going to jail because she was charged with robbery and there was a warrant issued out of Grand Prairie.  Plaintiff was placed in the patrol car, and asked Rodermund to leave the parking lot through the back exit, so that she would not be seen by her co-workers. Rodermund did not honor plaintiff's request, and left the parking lot through the main exit in view of plaintiff's co-workers. Officer Rodermund "laughed derisively" at plaintiff when plaintiff insisted that she had not committed any crimes.  Id. at 9.  Plaintiff complained that the seat belt in the patrol car was cutting her neck, and Rodermund responded, "What do you want me to do?  You have a felony and you have a $50,000 bond on you." Id.

Plaintiff was brought to the Arlington Police Station and processed for booking.  She was temporarily placed in a cell, and heard officers yell, "Inmate in for robbery!"  Id. at 10.  As plaintiff was being processed, she stated, "I need to see what is going on," and Doe responded, "Shut up or I'm going to put you in the hole."  Id.  Plaintiff was later placed into a holding area with other inmates.  An officer at the police station stated, "She has no criminal record!"  The same officer told plaintiff he "wanted to go the extra mile" for her, but that she would have to wait for the Grand Prairie authorities.  Id. at 11.  Next, Doe

forced plaintiff to remove her clothing in front of other inmates, and Doe then "strip searched" plaintiff.  Plaintiff was placed into the general prisoner population.

Plaintiff called family members and friends to explain what had happened.  Around 9:00 p.m., plaintiff was transferred with other prisoners to a facility with bunk beds, was assigned to a bunk, and was provided with a sheet, blanket, and toilet paper. The next morning, plaintiff again called her mother, and was then informed that Grand Prairie authorities were coming to pick her up and was permitted to change into her clothes.  Plaintiff overheard an officer comment, "[T]hat's the girl they wrongfully arrested." Id. at 12.  Hinson and Paulson picked plaintiff up and transported her to the Grand Prairie Police Department, where she was questioned.  She was released shortly thereafter.

Rumors have circulated at plaintiff's workplace regarding her arrest, and co-workers have "gossiped" about plaintiff.  As a result of plaintiff's arrest, her reputation in the banking industry has been damaged.  Her arrest was reported by the Arlington Police Department to the Texas Department of Public Safety, and showed up on a private electronic database. Plaintiff was so humiliated that she requested a transfer to another bank branch, but the rumors followed her to her new location and her commute "has been increased nearly 60 miles per

day." Id. at 17.  Following plaintiff's arrest, she was placed

on "physician prescribed disability leave and was prescribed

intensive therapy" to cope with emotional and mental anguish.

Plaintiff was diagnosed with depression and prescribed

medication.

II.

Plaintiff's Claims Against Rodermund, Arlington, and Doe

Plaintiff alleges that Rodermund, in his individual

capacity,[2] violated plaintiff's rights under the Fourth Amendment

to be free from unreasonable search and seizure by (1) arresting

plaintiff without probable cause; and (2) driving plaintiff

through the main exit of plaintiff's workplace in view of her co-

workers.  Plaintiff alleges that Arlington violated plaintiff's

Fourth Amendment rights by (1) maintaining a policy or custom

that prohibits officers from questioning whether an arresting

officer had probable cause to make the arrest; (2) maintaining a

policy or custom that prevents officers from withdrawing an

arrest "even though it became clear to many officers within the

---

[2] Plaintiff purports to sue Rodermund in his individual and official capacity; however, suing a government official in his or her official capacity is another way of suing the entity of which the official is an agent, and an official capacity lawsuit is treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Because plaintiff is also suing the entity of which Rodermund is an agent, Arlington, the court is dismissing plaintiff's claims against Rodermund in his official capacity because such claims are redundant of the claims against Arlington.

department that the warrant against the Plaintiff was improperly issued and the Plaintiff should not have been incarcerated or placed into the general prisoner population;" and (3) maintaining a policy or custom of strip searching new detainees in public view of other inmates.  Compl. at 19-20.

Plaintiff also alleges violations of her constitutional rights by Doe; however, the court does not permit lawsuits brought against unknown parties, and is therefore dismissing plaintiff's claims against Doe.  If and when plaintiff learns the identity of Doe, she may seek leave of court to amend her complaint to add Doe as a defendant at that time.

III.

Grounds of Defendants' Motions

Rodermund contends that plaintiff's claims against him must be dismissed because he is entitled to qualified immunity.  He argues that his actions were reasonable, and that he did not violate any of plaintiff's clearly established rights under the Fourth Amendment.  Arlington contends that plaintiff's allegations against it fail because there was probable cause for her arrest and detention, and because a strip search of a new detainee is not a Fourth Amendment violation, and, therefore, Arlington was not maintaining unconstitutional policies with regard to its treatment of plaintiff.

IV.

Analysis

A.    Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted).  Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.  See Twombly, 550 U.S. at 555 & n.3.  Thus, while a
court must accept all of the factual allegations in the complaint
as true, it need not credit bare legal conclusions that are
unsupported by any factual underpinnings.  See Ashcroft v. Iqbal,
556 U.S. 662, 679 (2009) ("While legal conclusions can provide
the framework of a complaint, they must be supported by factual
allegations.").

Moreover, to survive a motion to dismiss for failure to
state a claim, the facts pleaded must allow the court to infer

9

that the plaintiff's right to relief is plausible.  Iqbal, 556

U.S. at 679.  To allege a plausible right to relief, the facts

pleaded must suggest liability; allegations that are merely

consistent with unlawful conduct are insufficient.  Twombly, 550

U.S. at 566-69.  "Determining whether a complaint states a

plausible claim for relief . . . [is] a context-specific task

that requires the reviewing court to draw on its judicial

experience and common sense."  Iqbal, 556 U.S. at 679.

B.   Applying the Standards to Plaintiff's Claims Against
     Rodermund

     1.   Qualified Immunity

     Qualified immunity insulates a government official from

civil damages liability when the official's actions do not

"violate clearly established statutory or constitutional rights

of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity

protects "all but the plainly incompetent or those who knowingly

violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The court will not deny qualified immunity unless "existing

precedent [has] placed the statutory or constitutional question

beyond debate."  Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir.

Sept. 27, 2011) (revised Sept. 29, 2011) (citing Ashcroft v.

al-Kidd, --- U.S. ----, 131 S.Ct. 2074, 2083 (2011)).  In

analyzing whether an individual defendant is entitled to
qualified immunity, the court considers whether a plaintiff has
alleged any violation of a constitutional right, and whether the
right was "clearly established" at the time of the alleged
violation.  <u>Harlow</u>, 457 U.S. at 818.  The court may use its
discretion in deciding which of the two prongs in the qualified
immunity analysis to first consider in light of the circumstances
of a particular case.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236
(2009).

    2.   <u>Probable Cause to Arrest Plaintiff</u>

Government officials are protected from charges of wrongful
arrest where a reasonable official would believe probable cause
existed, <u>Brown v. Lyford</u>, 243 F.3d 185 (5th Cir. 2001), and an
officer is entitled to qualified immunity for a claim of wrongful
arrest unless the officer lacked probable cause.  <u>Eugene v. Alief
Indep. Sch. Dist.</u>, 65 F.3d 1299, 1305 (5th Cir. 1995).  The
Supreme Court has defined probable cause as the "facts and
circumstances within the officer's knowledge that are sufficient
to warrant a prudent person, or one of reasonable caution" to
believe that the suspect has committed an offense.  <u>Michigan v.
DeFillippo</u>, 443 U.S. 31, 37 (1979).  "The Fourth Amendment is not
violated by an arrest based on probable cause, even though the
wrong person is arrested."  <u>Graham v. Connor</u>, 490 U.S. 386, 396

(1989) (citing <u>Hill v. California</u>, 401 U.S. 797 (1971)).   "The
Constitution does not guarantee that only the guilty will be
arrested.  If it did, § 1983 would provide a cause of action for
every defendant acquitted--indeed, for every suspect released."
<u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979).

    Plaintiff's complaint alleges that Rodermund did not have
probable cause to arrest her because "no prior attempt had been
made to serve an arrest warrant on the Plaintiff, the Plaintiff
had no criminal history, the [Plaintiff] worked at a major
national bank, the felony Warrant with a $50,000 bond was issued
by a municipal court instead of a district court, and the
Plaintiff pleaded her innocence."  Compl. at 18.  Rodermund
contends that plaintiffs allegations actually show that Rodermund
had probable cause to arrest plaintiff, and that Rodermund did
not violate any of plaintiff's clearly established rights under
the Fourth Amendment.

    Plaintiff admits that a warrant was issued for her arrest:
"[Plaintiff's] arrest was predicated on the issuance of a
Probable Cause Warrant ("Warrant") by Judge Chad Bull, Magistrate
of the Municipal Court for the City of Grand Prairie."  Compl. at
4.  The warrant called for plaintiff's arrest for robbery under
section 29.02 of the Texas Penal Code, and a $50,000 bond was
set.  Plaintiff argues that "there was no authority for the

12

issuance of the warrant" upon which Rodermund arrested her
because the warrant was issued by a magistrate of a municipal
court, robbery is a second-degree felony, and district courts and
criminal district courts have original jurisdiction to prosecute
a felony. Pl.'s Resp. at 8. However, the fact that the
municipal court does not hear prosecutions for robbery does not
mean that the court's judges, who are designated as magistrates
under Texas law, have no power as magistrates to issue an arrest
warrant for such an offense. Indeed, under Texas law,
magistrates have the authority and the duty to issue such
process. See Tex. Code of Crim. Proc. arts. 2.09, 2.10, 15.01,
15.03. See also Barnes v. Madison, 79 F. App'x 691, 702 (5th
Cir. 2003). Therefore, plaintiff's arguments that the warrant
was invalid and that Rodermund should have known it was invalid
are without merit.

Because the warrant was facially valid, Rodermund is
presumed to have had probable cause to arrest plaintiff. Duckett
v. City of Cedar Park, Tex., 950 F.2d 272, 280 (5th Cir. 1992).
A facially valid warrant certainly falls within the "facts and
circumstances within the officer's knowledge that are sufficient
to warrant a prudent person, or one of reasonable caution" to
believe that the suspect has committed an offense." DeFillippo,
443 U.S. 31, 37 (1979); Duckett, 950 F.2d at 279-80.

Plaintiff also argues that Rodermund should have known he did not have probable cause to arrest her because she had no criminal history, worked at a bank, and repeatedly pleaded her innocence. The Fifth Circuit has held that "once a police officer ascertains *beyond a reasonable doubt* that the reasons which gave rise to the initial lawful arrest become invalid, the arrestee should be released." Duckett, 950 F.2d at 279 (5th Cir. 1992) (emphasis in original). Plaintiff's employment status, lack of criminal history, and pleas of innocence were not sufficient for Rodermund to ascertain that the arrest was invalid beyond a reasonable doubt. Further, in Duckett, the court determined that officers acted objectively reasonably in arresting and holding an individual pursuant to a warrant, even though the individual protested--correctly--that the warrant had been withdrawn, and the officers received information on three separate occasions that the warrant may have been invalid. Id. at 280. See also Baker v. McCollan, 443 U.S. 137, 145-46 (1979) (determining that an arrest and subsequent three-day detention were valid despite plaintiff's protestations of innocence and mistaken identity, even when plaintiff's protestations turned out to be true). Under the circumstances, the court concludes that it was objectively reasonable for Rodermund to arrest plaintiff pursuant to the warrant, and Rodermund is entitled to qualified

14

immunity on this claim.

3.   Ritual Degradation Claim

Plaintiff alleges that Rodermund's actions in driving
through the main exit of plaintiff's workplace after arresting
her constitutes an unreasonable search and seizure because he
knew it would embarrass her and it served no legitimate law
enforcement purpose.   Rodermund contends that plaintiff fails to
allege a constitutional violation, as the simple act of choosing
which exit of a parking lot to use cannot amount to an
unreasonable search and seizure.   In support of this claim,
plaintiff cites two cases in her complaint, Lauro v. Charles, 219
F.3d 202 (2d Cr. 2000) and Eldridge v. Block, 832 F.2d 1132 (9th
Cir. 1987).   However, Lauro involves circumstances much more
extreme than plaintiff's situation, and Eldridge is irrelevant to
plaintiff's claim.[3]   In Lauro, the Second Circuit  held that a
"perp walk," in which a plaintiff was paraded in front of the
press to be photographed and filmed after being arrested, for
purposes of publicizing police efforts and providing the press
with "a dramatic illustration to accompany stories about the
arrest" was unreasonable because it had no legitimate law
enforcement purpose.   Lauro, 219 F.3d at 203, 213.

---

[3] Eldridge involves a prisoner's extradition to Maryland from California and the right of a pro se prisoner to access a law library and materials.

15

Rodermund's action in driving plaintiff through the main exit is not analogous to the circumstances of <u>Lauro</u>. Plaintiff was not paraded before the press, her arrest was not unreasonably publicized, and she could not have had any reasonable expectation of privacy in her arrest. As Rodermund points out, the Supreme Court has held that there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." <u>Paul v. Davis</u>, 424 U.S. 693, 702 (1976). Simply because plaintiff was embarrassed in front of her coworkers does not mean that her rights under the Constitution were violated. Arrests may be publicized, and plaintiff has no right of privacy that prohibits the government from publicizing her arrest if it had chosen to do so. <u>Id.</u> at 713. It follows that plaintiff had no right to determine which exit Rodermund would use when driving her from the bank to the police station. Therefore, the court concludes that plaintiff fails to state a claim against Rodermund, and claims against him should be dismissed.

C. <u>Applying the Standards to Plaintiff's Claims Against Arlington</u>

With regard to municipal liability for constitutional violations by the municipality's employees, there is no liability

16

on the basis of respondeat superior.  Bd. Of Cnty. Comm'rs of
Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997); Pineda v.
City of Hous., 291 F.3d 325, 328 (5th Cir. 2002).  Rather, a
municipality may be liable if the execution of one of its
policies or customs deprives a plaintiff of her constitutional
rights.  To state a claim for a city's liability under § 1983, a
plaintiff must allege facts that can establish proof of (1) a
policymaker; (2) an official policy; and (3) a violation of the
plaintiff's constitutional rights, where the "moving force"
behind the violation is the city's policy or custom.  Monell v.
Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiff has alleged that particular policies and customs
of Arlington led to violations of her constitutional rights.  At
this point in the litigation, the court concludes that dismissal
of plaintiff's claims against Arlington is premature, and the
issues raised therein are better suited for adjudication in a
motion for summary judgment.

D.  Punitive Damages

Arlington contends that plaintiff is barred from recovering
punitive damages against it because, as a municipality, it is not
subject to claims for punitive damages under § 1983.  A state and
its political subdivisions cannot be held liable for punitive

damages for allegations asserted pursuant to § 1983. See <u>City of</u>
<u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1980); <u>Davis</u>
<u>v. West Cmty Hosp.</u>, 755 F.2d 455, 467 (5th Cir. 1985).
Therefore, plaintiff cannot seek punitive damages against
Arlington.

V.

Order

Therefore,

The court ORDERS that Rodermund's motion to dismiss
plaintiff's claims against him be, and is hereby, granted, and
that all claims and causes of action asserted by plaintiff,
Shelia Moore, against Rodermund, in his individual capacity, be,
and are hereby, dismissed with prejudice.

The court further ORDERS that Arlington's motion to dismiss
plaintiff's claims against it be, and is hereby, denied, except
that plaintiff is barred from seeking punitive damages against
Arlington.

The court further ORDERS that plaintiff's claim seeking
punitive damages against Arlington be, and is hereby, dismissed
with prejudice.

The court further ORDERS that all claims and causes of

action asserted by plaintiff against Doe be, and are hereby,

dismissed without prejudice.

     SIGNED March 21, 2013.

_____
JOHN McBRYDE
United States District Judge