

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SHELIA MOORE,                        §
                                     §
          Plaintiff,                 §
                                     §
VS.                                  §   NO.  4:12-CV-624-A
                                     §
CITY OF GRAND PRAIRIE,               §
ET AL.,                              §
                                     §
          Defendants.                §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion of defendants
City of Grand Prairie ("Grand Prairie"), Officer Alex Chasteen
("Chasteen"), Officer Tracy Hinson ("Hinson"), and Officer
Paulson ("Paulson") (collectively, "defendants"), for judgment on
the pleadings pursuant to Rule 12(c) of the Federal Rules of
Civil Procedure.  Plaintiff, Shelia Moore ("Moore"), filed a
response, and defendants filed a reply.  After having considered
plaintiff's second amended complaint, the motions, plaintiff's
response, and applicable legal authorities, the court has
concluded that the motion should be granted in part and denied in
part.

I.

Background

Plaintiff initiated this action by the filing of an original

complaint, and has twice amended her complaint, with her second amended complaint ("complaint") being filed on February 21, 2013. Plaintiff asserted claims pursuant to 42 U.S.C. § 1983 against the above-named defendants and against the City of Arlington ("Arlington") and Officer Rodermund ("Rodermund"). Arlington and Rodermund each filed a motion to dismiss for failure to state a claim, and the court denied Arlington's motion but granted Rodermund's motion.

The complaint makes the following factual allegations relevant to plaintiff's claims against Grand Prairie, Chasteen, Hinson, and Paulson:

Plaintiff is a forty-year-old African-American woman who had no arrest or criminal record beyond traffic violations prior to the events described in the complaint. Plaintiff has been employed by a national bank for six years, and had worked in law enforcement for seven years before working at the bank. She was previously known by her married name, Shelia Moore Banks.

On November 26, 2011, a "Probable Cause Warrant" was issued for plaintiff's arrest by Judge Chad Bull, Magistrate of the Municipal Court of Grand Prairie, and carried warrant no. 110026132. The warrant, dated November 16, 2011, called for plaintiff's arrest under section 29.02 of the Texas Penal Code, which involves the offense of robbery and states that the offense

2

is a felony of the second degree.  A bond amount of $50,000 was set for the warrant, and the warrant was issued based on the sworn statement of Chasteen in an affidavit also dated November 16, 2011.  The affidavit contained the following statements:

19.  In the Affidavit, Officer Chasteen attested that he believed that Ms. Moore committed the offense of robbery on September 28, 2011.

20.  In the Affidavit, Officer Chasteen stated that his sworn statement was based on the personal investigation of Defendant Officer Hinson.

21.  The Affidavit stated that on September 28, 2011, complainant stated that a Black female with curly hair emerged from a Honda Accord and grabbed the complainant's purse.  The complainant fell to the ground during the ensuing struggle.

22.  The Affidavit stated that the complainant suffered a broken ankle as a result of the struggle.

23.  The Affidavit stated that the purse contained the complainant's Iphone, credit cards, and other items.

24.  The Affidavit stated that a Black male remained inside of the car during the robbery.

25.  The Affidavit stated that Officer Hinson determined the serial number of the Iphone to be 87027U4UA4S.  The Affidavit also stated that the Black female defendant used the complainant's credit cards at several locations in Arlington, Texas, including a liquor store, gas stations, and grocery stores.  The Affidavit states that Officer Hinson obtained video footage of a Black female defendant in a Kroger store with two small children using the credit card within twenty minutes of the robbery.

26.  The Affidavit stated that Officer Hinson found the Iphone was pawned by Uncle Dan's Pawn #2 within 24 hours of the robbery by Adrian Brown.  The Affidavit

states Adrian Brown lives with the Black female
defendant at 139 Dynamic Drive, DeSoto, Texas.

27.  The Affidavit stated that Plaintiff, Ms. Moore resides
at 139 Dynamic Drive, DeSoto, Texas.

28.  The Affidavit stated that Officer Hinson obtained a
photograph of Ms. Moore and that the complainant
identified Ms. Moore's photograph as the person who
robbed her.

Compl. at 4-5, ¶¶ 19-28.

Some of the facts contained in Chasteen's affidavit differ

from facts described in a police report dated September 28, 2011,

the date of the robbery, specifically (1) that the police report

referred to the vehicle as a "gray older model car," but the

affidavit referred to it as a Honda Accord; and (2) that the

police report indicated that the complainant's ankle was swollen,

not broken as the affidavit stated, and the complainant was

treated and released on the scene.  Id. at 6, ¶¶ 31-32.

Plaintiff was arrested pursuant to the warrant on April 26,

2012 by Rodermund, an Arlington police officer, and spent the

night at the Arlington Police Department's jail.  One of the

officers called the Grand Prairie Police Department, and told

plaintiff she had to wait until Grand Prairie responded before

they could release her.  Plaintiff's family members repeatedly

called the Grand Prairie Police Department, but "their calls were

not taken by Officer Hinson or any other responsible official."
Id. at 11, ¶ 64.

The next morning, Hinson and Paulson arrived at the jail,
took custody of plaintiff, and drove her to the Grand Prairie
Police Department.  Hinson initiated a conversation with
plaintiff, inquiring about her employment with the bank and her
residence.  Hinson stated that he went to the trailer where her
address had been listed, and she informed him that she had not
lived there "in a very long time."  Id. at 13, ¶ 72.  Hinson
stated that he saw that she did not live there, but did not have
a way to get in touch with her, to which plaintiff replied that
the property manager had her forwarding address.  Plaintiff was
booked into the Grand Prairie Police Department jail, and was
held alone in a detention area "for some time" before being taken
to an interrogation room.

In the interrogation room, Hinson showed plaintiff a sheet
of paper, stated that it contained a recital of her rights, and
told her to place her initials on the paper.  Plaintiff asked
Hinson what was happening, and Hinson responded that he would not
explain unless she signed the paper, which she did "reluctantly"
while not entirely understanding the document.  Id. at ¶ 74.
Hinson questioned plaintiff about a photograph of a woman with
two children, whom plaintiff stated she did not know.  Hinson

questioned plaintiff about Brown, and told plaintiff that Brown had claimed to live with her; plaintiff stated that she did not know Brown.  Hinson also told plaintiff that a woman named Crenecia Brown, who was Brown's wife or girlfriend, had told Hinson that plaintiff was responsible for the robbery.  Hinson informed plaintiff about the robbery, showed plaintiff a photograph of a Honda Accord, and plaintiff identified the Accord as her car.  The photograph was not taken at the scene of the robbery, but was taken two days later from a traffic light camera.  After questioning plaintiff, Hinson told her he was dropping all charges against her.  Plaintiff asked Hinson to call her mother and her supervisor and explain to them that plaintiff had done nothing wrong, which Hinson did.  Plaintiff was then released, within one hour of being transferred to Grand Prairie.

## II.

### Plaintiff's Claims Against Paulson, Chasteen, Hinson, and Grand Prairie

Plaintiff alleges that Paulson, Chasteen, and Hinson, in their individual capacities,[1] (1) violated plaintiff's rights

---

[1] The complaint does not specify whether plaintiff is suing the individual defendants in their individual or official capacity; however, suing a government official in his or her official capacity is another way of suing the entity of which the official is an agent, and an official capacity lawsuit is treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Because plaintiff is also suing the entity of which the individuals are agents, Grand Prairie, the court is dismissing plaintiff's claims against the individuals in their official capacities because such claims are redundant of the claims against Grand Prairie.

under the Fourth Amendment by securing an arrest warrant without probable cause and misleading the magistrate who issued the warrant; (2) violated plaintiff's rights under the due process clause of the Fifth and Fourteenth Amendments "through the manufacturing of evidence and knowing use of false statements;" and (3) violated plaintiff's rights under the Fifth and Sixth Amendments by failing to notify plaintiff of her right against self-incrimination and right to counsel prior to interrogation, and by asking plaintiff to sign a document pertaining to her rights that she did not understand.  Id. at 20-21, ¶¶ 103-05.

Plaintiff alleges that Grand Prairie violated her rights under the Fourth Amendment by maintaining a policy or custom (1) allowing officers to seek a warrant before the Grand Prairie municipal court when the district courts of Texas have original jurisdiction over felony claims; and (2) allowing the absence of proper training, experience, hiring procedures, supervision, and discipline, which led to the intentional withholding of evidence before the magistrate.

III.

Grounds of Defendants' Motion

Paulson, Chasteen, and Hinson contend that the complaint fails to state a plausible claim for relief because, taking plaintiff's allegations as true, the conduct is protected by the

doctrine of qualified immunity.  Grand Prairie argues that it is entitled to summary judgment[2] because plaintiff has failed to prove that a policy, practice, or custom of the local governing body caused a deprivation of plaintiff's constitutional rights.

IV.

Analysis

A.    Standard of Review

Under Rule 12(c) of the Federal Rules of Civil Procedure, any party may move for judgment on the pleadings after the pleadings are closed and when it would not delay trial.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  Johnson v. Johnson, 385 F.3d 503, 528 (5th Cir. 2004). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir. 1991).

---

[2]  Grand Prairie asserts that it is entitled to summary judgment, even though this motion is a motion for judgment on the pleadings.  At this stage in the litigation, plaintiff need only allege facts sufficient to support a plausible claim for relief, not prove such facts.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 679. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely

consistent with unlawful conduct are insufficient. <u>Twombly</u>, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

B.  <u>Applying the Standards to Plaintiff's Claims Against</u>
    <u>Paulson, Chasteen, and Hinson</u>

Defendants Paulson, Chasteen, and Hinson contend that they are entitled to qualified immunity, and that all claims against them should be dismissed. Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). The court will not deny qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate." <u>Morgan v. Swanson</u>, 659 F.3d 359, 371 (5th Cir. Sept. 27, 2011) (revised Sept. 29, 2011) (citing <u>Ashcroft v. al-Kidd</u>, --- U.S. ----, 131 S.Ct. 2074, 2083 (2011)). In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether a

plaintiff has alleged any violation of a constitutional right, and whether the right was "clearly established" at the time of the alleged violation. <u>Harlow</u>, 457 U.S. at 818. The court may use its discretion in deciding which of the two prongs in the qualified immunity analysis to first consider in light of the circumstances of a particular case. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." <u>Hampton v. Oktibbeha Cnty. Sheriff Dep't</u>, 480 F.3d 358, 363 (5th Cir. 2007) (quoting <u>Thompson v. Upshur Cnty.</u>, 245 F.3d 447, 457 (5th Cir. 2001)) (emphasis in original).

    1.    <u>Claims Against Paulson</u>

    Defendants contend, and plaintiff admits, that plaintiff has not alleged facts that can support a plausible cause of action against Paulson under any theory of recovery. The sole factual allegation in the complaint regarding Paulson is that he assisted Hinson in transporting plaintiff from the Arlington jail to the Grand Prairie jail. There are no allegations that Paulson was in any way involved in any other action involving plaintiff, and it is clear that all claims against Paulson should be dismissed.

2.   <u>Claims Against Hinson and Chasteen</u>

Plaintiff alleges that Hinson conducted the investigation of the robbery incident and plaintiff's possible connection to the incident, and that Hinson's and Chasteen's actions and statements caused the warrant to be issued for plaintiff's arrest without probable cause, in violation of her rights under the Fourth Amendment and the due process clause of the Fifth and Fourteenth Amendments.[3]   Plaintiff also alleges violations of her rights under the Fifth and Sixth Amendments with regard to the interrogation procedures at the Grand Prairie jail.

a.   <u>Fourth Amendment Claims Regarding Arrest Warrant</u>

Plaintiff contends that false statements were used, evidence was contrived, plaintiff's photograph was wrongly placed in a photo lineup, and relevant information was withheld from the magistrate to induce the issuance of the warrant, all in violation of her Fourth Amendment rights.   Hinson and Chasteen contend that they did not violate any clearly established right of plaintiff's, and their actions were objectively reasonable. Hinson and Chasteen argue that probable cause clearly existed for

---

[3] Defendant correctly contends that plaintiff's due process claims are only applicable under the Fourteenth Amendment, because the Fifth Amendment due process clause "applies only to the actions of the federal government, and not to the actions of a municipal government." <u>Morin v. Caire</u>, 77 F.3d 116, 120 (5th Cir. 1996).  Accordingly, plaintiff's claims under the due process clause of the Fifth Amendment should be dismissed without further analysis.

the issuance of the warrant, and any irregularities noted by plaintiff are inconsequential to the probable cause analysis.

Government officials are protected from charges of wrongful arrest where a reasonable official would believe probable cause existed, <u>Brown v. Lyford</u>, 243 F.3d 185 (5th Cir. 2001), and an officer is entitled to qualified immunity for a claim of wrongful arrest unless the officer lacked probable cause. <u>Eugene v. Alief Indep. Sch. Dist.</u>, 65 F.3d 1299, 1305 (5th Cir. 1995). The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution" to believe that the suspect has committed an offense, <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 37 (1979), and probable cause requires a "fair probability" that a defendant engaged in criminal activity. <u>United States v. Garcia</u>, 179 F.3d 265, 268-69. A "fair probability" must be "something more than a bare suspicion, but need not reach the fifty percent mark." <u>Id.</u> at 269. The court analyzes the "totality of the circumstances" when determining whether such "fair probability" existed. <u>United States v. Antone</u>, 753 F.2d 1301, 1304 (5th Cir. 1985). "The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (citing <u>Hill v. California</u>, 401 U.S. 797

13

(1971)).  "The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released."  Baker v. McCollan, 443 U.S. 137, 145 (1979).

Generally, when a neutral magistrate issues a warrant, a presumption is raised that it was reasonable for the officer to believe that there was probable cause for the issuance of the warrant.  See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991); Mullins v. Crouch, 391 F. Supp.2d 457, 461 (N.D. Tex. 2005).  However, the reasonableness of a warrant may be undermined by a warrant application that contains material falsehoods and omissions, and an officer may be liable if he or she swears to false or omitted information in an affidavit for a search warrant if the officer knows information is false or omitted, or should know but for the officer's reckless disregard for the truth, and the warrant would not establish probable cause without the false information.  Franks v. Delaware, 438 U.S. 154, 171 (1978); Hale v. Fish, 899 F.2d 390, 400-01 (5th Cir. 1990).  Both the affiant and the officer who provided the information for the affidavit may be held liable if a warrant is procured improperly.  Michalik v. Hermann, 422 F.3d 252, 261 (5th Cir. 2005).

Applying the above standards, and accepting plaintiff's

allegations as true, Hinson and Chasteen are not entitled to
qualified immunity on the Fourth Amendment claims at this point
in the litigation.   While they may or may not ultimately prevail,
the record is not sufficiently developed at this time for the
court to make a definitive finding on whether their conduct
violated a clearly established right of plaintiff's under the
Fourth Amendment, and whether their conduct in procuring the
arrest warrant was objectively reasonable.

　　Plaintiff makes allegations about contrived evidence,
unreliable testimony, defendants' failure to conduct a thorough
investigation, and defendants' attempt to "pin blame" on
plaintiff by including her in a photo lineup.   Compl. at 20-21.
Defendants contend that objective information established
probable cause for the issuance of the warrant: the victim of the
robbery identified plaintiff from a photo lineup, and plaintiff's
car matched the description of the car used by the assailant at
the robbery.   However, plaintiff argues that defendants never
compared the surveillance video from the Kroger store to a photo
of plaintiff, which would have shown that plaintiff was not the
person in the video using the stolen credit cards; that
defendants easily could have obtained her correct address, which
she had provided to the Texas Department of Motor Vehicles on
April 8, 2011, several months before the robbery incident, and

which was also available through the property manager of
plaintiff's former residence; that Hinson "stated that he saw
that she did not live there but had no way to get in contact with
her"; that the statement that plaintiff lived with Brown had come
from Crenecia, Brown's girlfriend or wife, who was inherently
unreliable; that defendants omitted the names of Brown and
Crenecia in the affidavit knowing that the inclusion of the names
would cast doubt on the propriety of the warrant; and that there
were various discrepancies between the police report and the
affidavit for the search warrant.  Compl. at 13, ¶ 72; Pl.'s Br.
at 13-14.  Given the totality of the circumstances at this stage
of the proceedings, the court concludes that plaintiff's Fourth
Amendment claims against Hinson and Chasteen related to the
procurement of the arrest warrant may go forward.

      b.   Fourteenth Amendment Due Process Claims

     Plaintiff fails to allege facts that would support a due
process claim against Hinson or Chasteen, and such claim should
be dismissed.  Plaintiff alleges that her due process rights
under the Fourteenth Amendment were violated by Chasteen and
Hinson "through the manufacturing of evidence and knowing use of
false statements." Compl. at 21, ¶ 104.  However, the right to
be free from arrest without probable cause is protected by the
Fourth Amendment, not the Fourteenth Amendment.  See Albright v.

Oliver, 510 U.S. 266, 268, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); Dupont v. Linden, 81 F.3d 155 (5th Cir. 1996) ("A claim for wrongful arrest arises under the Fourth Amendment, but not the Fourteenth."). Plaintiff's due process claims are essentially the same as her Fourth Amendment claims, involving allegations that Chasteen and Hinson improperly obtained an arrest warrant. Accordingly, the due process claims are dismissed.

> c. <u>Fifth and Sixth Amendment Claims Regarding Right Against Self-Incrimination and Right to Counsel</u>

Plaintiff next alleges that Hinson and Chasteen failed to inform plaintiff of her right against self-incrimination and her right to counsel prior to interrogation.[4] Plaintiff claims that she did not understand the document Hinson presented to her that contained her <u>Miranda</u> warnings and Fifth Amendment rights. As far as plaintiff's Fifth Amendment claims, even if there had been a violation of her <u>Miranda</u> rights, such a violation does not provide a basis for a self-incrimination claim for damages when no incriminating statements were ever used in any criminal proceedings. <u>Chavez v. Martinez</u>, 538 U.S. 760, 767 (2003).

---

[4] Although plaintiff names Chasteen and Hinson in this claim, the factual allegations related to this claim do not refer to Chasteen, and refer only to Hinson.

Plaintiff answered Hinson's questions, provided exonerating--not incriminating--statements, had all charges against her dropped promptly, and never had a criminal case instituted against her. As the Court in <u>Chavez</u> made clear, an individual who is never prosecuted for a crime nor compelled to be a witness against herself in a criminal case cannot allege a violation of the Fifth Amendment's protection against self-incrimination. <u>Id.</u> at 766 ("[A] 'criminal case' at the very least requires the initiation of legal proceedings.").

Plaintiff's Sixth Amendment claim that she was not advised of a right to counsel must also be dismissed, as the right to counsel under the Sixth Amendment "attaches at the commencement of formal judicial proceedings against an accused." <u>Self v. Collins</u>, 973 F.2d 1198, 1206 (5th Cir. 1992). <u>See also</u> <u>Brewer v. Williams</u>, 430 U.S. 387, 398 (1977) ("[T]he right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.") (internal quotations omitted). At the time plaintiff spoke with Hinson at the Grand Prairie jail, no formal proceedings had been initiated against plaintiff, and all charges against her were dropped at the end of the

conversation.  The court also notes that plaintiff's specific complaint is not that defendants failed to provide her with an attorney, but failed to inform her of the right to have an attorney present, which seems more in line with plaintiff's earlier claim that Hinson did not notify her of her <u>Miranda</u> rights.  In any event, plaintiff has not alleged facts that can support a Fifth or Sixth Amendment claim against any of the officers under any theory, and such claims must be dismissed.

In summary, all of plaintiff's claims against Paulson should be dismissed, plaintiff is entitled to proceed on her Fourth Amendment claims against Chasteen and Hinson, and plaintiff's Fourteenth, Fifth, and Sixth Amendment claims against Chasteen and Hinson should be dismissed.

C.  <u>Applying the Standards to Plaintiff's Claims Against Grand Prairie</u>

With regard to municipal liability for constitutional violations by the municipality's employees, there is no liability on the basis of respondeat superior.  <u>Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997); <u>Pineda v. City of Hous.</u>, 291 F.3d 325, 328 (5th Cir. 2002).  Rather, a municipality may be liable if the execution of one of its policies or customs deprives a plaintiff of her constitutional rights.  To state a claim for a city's liability under § 1983, a

plaintiff must allege facts that can establish proof of (1) a policymaker; (2) an official policy; and (3) a violation of the plaintiff's constitutional rights, where the "moving force" behind the violation is the city's policy or custom.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiff has alleged that particular policies and customs of Grand Prairie led to violations of her constitutional rights. At this point in the litigation, the court concludes that dismissal of plaintiff's claims against Grand Prairie is premature, and the issues raised therein are better suited for adjudication in a motion for summary judgment.

D.   Punitive Damages Against Grand Prairie

Grand Prairie contends that plaintiff is barred from recovering punitive damages against it because, as a municipality, it is not subject to claims for punitive damages under § 1983.  A state and its political subdivisions cannot be held liable for punitive damages for allegations asserted pursuant to § 1983.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1980); Davis v. West Cmty Hosp., 755 F.2d 455, 467 (5th Cir. 1985).  Therefore, plaintiff cannot seek punitive damages against Grand Prairie.

V.

Order

Therefore,

The court ORDERS that Paulson's motion for judgment on the pleadings as to claims against him be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff against Paulson in his individual capacity, be, and are hereby, dismissed with prejudice.

The court further ORDERS that Chasteen and Hinson's motion for judgment on the pleadings be, and is hereby, granted as to plaintiff's claims under the Fifth, Sixth, and Fourteenth Amendments, and that such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS that Chasteen and Hinson's motion for judgment on the pleadings be, and is hereby, denied as to plaintiff's claims under the Fourth Amendment.

The court further ORDERS that Grand Prairie's motion for judgment on the pleadings be, and is hereby, denied, except that plaintiff is barred from seeking punitive damages against Grand Prairie.

The court further ORDERS that plaintiff's claim seeking

punitive damages against Grand Prairie be, and is hereby,

dismissed with prejudice.

SIGNED June 20, 2013.

JOHN MCBRYDE
United States District Judge