IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | |
|---|---|
| SHELIA MOORE, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § NO. 4:12-CV-624-A |
| | § |
| CITY OF GRAND PRAIRIE, ET AL., | § |
| | § |
| Defendants. | § |

### MEMORANDUM OPINION
### and
### ORDER GRANTING ARLINGTON'S MOTION FOR SUMMARY JUDGMENT

Before the court for consideration and decision is the motion for summary judgment of defendant City of Arlington, Texas ("Arlington"). After having considered such motion, to which plaintiff, Sheila Moore, has not responded, the summary judgment record, other pertinent parts of the record, and pertinent legal authorities, the court has concluded that such motion should be granted.

I.

### Background, Nature of the Action, and
### Plaintiff's Claims Against Arlington

As plaintiff's action existed when she filed her current complaint (her second amended complaint), the defendants were Arlington, Arlington police officer Rodermund, unidentified Arlington police officer Jane Doe, City of Grand Prairie, Texas ("Grand Prairie"), Grand Prairie police officer Alex Chasteen

("Chasteen"), Grand Prairie police officer Tracy Hinson ("Hinson"), and Grand Prairie police officer Timothy Paulson ("Paulson").

On March 21, 2013, the court issued a memorandum opinion and order and final judgment as to certain parties ruling on a motion by defendants officer Rodermund and Arlington to dismiss for failure to state a claim upon which relief may be granted. The court dismissed plaintiff's claims against officers Rodermund and Jane Doe and denied the motion as to Arlington except as to plaintiff's claim seeking punitive damages against Arlington, which was dismissed.

On June 20, 2013, the court issued a memorandum opinion and order and final judgment as to certain party ruling on a motion for judgment on the pleadings filed by Grand Prairie, Chasteen, Hinson, and Paulson. The court dismissed plaintiff's claims against officer Paulson, dismissed plaintiff's claims under the Fifth, Sixth, and Fourteenth Amendments against officers Chasteen and Hinson, and dismissed plaintiff's claim for punitive damages against Grand Prairie. Otherwise, the court denied the motion.

Detailed descriptions of plaintiff's claims and the factual background of those claims were contained in the March 21 and June 20, 2013 memorandum opinions. Those parts of those memorandum opinions are here adopted by reference. Under this

heading in this memorandum opinion and order the court focuses on plaintiff's claims against Arlington.

Plaintiff's claims, as reflected by her second amended complaint, are for alleged deprivation of rights protected under the Fourth Amendment to the United States Constitution, which she is asserting through the authority of 42 U.S.C. § 1983. She contends that she was the unfortunate victim of an arrest for an offense she did not commit, but for which a warrant had been issued for her arrest. The warrant was issued at the behest of the police department of Grand Prairie by a judge of the municipal court of Grand Prairie. When an officer of Arlington had occasion to run a license plate check on plaintiff's vehicle, as she was driving in Arlington, the officer learned that the Grand Prairie felony warrant for plaintiff's arrest for having committed a robbery was outstanding. Once backup officers arrived, the officer arrested plaintiff. She promptly proclaimed her innocence, as she continued to do so until she was released from custody by the Grand Prairie police department the following day.

Before plaintiff was transferred to the Grand Prairie police department by the Arlington police department, she was kept in custody at an Arlington jail facility, where she was booked-in, required to change into jail attire, and stayed overnight until

the Grand Prairie police officials took her into custody and transferred her to the Grand Prairie police facility.

Plaintiff made three claims against Arlington:

(1) Arlington violated her Fourth Amendment rights to be free from unreasonable search and seizure because it maintains a policy or custom prohibiting officers to question whether an "arresting officer" lacked probable cause for an arrest. Plaintiff alleged that the officers who assisted in the arrest of plaintiff were prohibited from exercising discretion regarding the arrest because Arlington's policy or custom allows only the arresting officer that authority.

(2) A policy or custom of Arlington prevents its officers from withdrawing an arrest even though it becomes clear to many officers within the department that the warrant was improperly issued; and, plaintiff complained that she should not have been placed in the general prison population under the circumstances.

(3) Arlington violated her Fourth Amendment right to be free from unreasonable search and seizure because by policy and custom Arlington conducts strip searches of new detainees in public view of other inmates.

II.

Pertinent Facts That Are Undisputed

Undisputed facts in the summary judgment record pertaining to whether police officers of Arlington engaged in

unconstitutional conduct in arresting plaintiff, and keeping her in custody overnight, are as follows: She was arrested pursuant to an outstanding felony arrest warrant from Grand Prairie signed by a judge in Grand Prairie, calling for plaintiff's arrest for the offense of second degree felony robbery. The warrant was issued on the basis of a sworn statement of a Grand Prairie police officer. She was arrested by officer Rodermund of the Arlington Police Department, and other police officers were at the scene of her arrest, serving as backup officers. Plaintiff was held in the Arlington jail from April 26 until the following day, at which time her custody was transferred to the Grand Prairie police department. From the time of her arrest until her transfer to the custody of the Grand Prairie police officer, she repeatedly proclaimed her innocence.

The undisputed summary judgment evidence as to plaintiff's "strip search" while she was in custody of the Arlington police department is as follows: Following plaintiff's arrest, she was placed in a room with three other female inmates and was told to remove her clothing down to her underwear by a jailer who was on the other side of the wall. She was told to raise her arms and turn around for the jail officer to observe her. Plaintiff was then issued a jail uniform to wear. She was not physically touched by anyone during that process.

The court's attention has not been called to any summary judgment evidence that would provide any support for the policy or custom feature of plaintiff's claims against Arlington.

### III.

### The Grounds of Arlington's Motion

Arlington maintained in its motion for summary judgment that, first, there is nothing in the summary judgment record that would raise an issue of fact in support of any contention by plaintiff that any police officer of Arlington violated any of her constitutional rights, and, second, even if there had been evidence of such a violation, plaintiff has adduced no evidence of any policy or custom of Arlington that would support a contention that any of the police officer conduct of which plaintiff complained was attributable to Arlington.

### IV.

### Applicable Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

A motion for summary judgment cannot be granted simply because there is no opposition. Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, however, the court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when those facts establish a prima facie showing of entitlement to judgment. See Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." Bookman v. Schubzda, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing Solo Serve Corp. v. Westowne Assocs., 929 F.2d 160, 165 (5th Cir. 1991).

V.

Analysis

For plaintiff to successfully maintain her claims brought under § 1983 against Arlington, a municipality, she was required to show that the conduct about which she is complains was an unconstitutional implementation or execution of a policy officially adopted or promulgated by Arlington's officials, or was pursuant to governmental custom, "whether made by [Arlington's] lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978).

The first shortcoming of plaintiff's claims against Arlington is that she has adduced no summary judgment evidence that any of its police officers violated her rights under the United States Constitution.

The first question to be decided is whether there is summary judgment evidence that the arrest and detention of plaintiff by Arlington police officers violated her Fourth Amendment rights. In deciding that issue, the court must bear in mind the statement

8

of the Supreme Court that "the Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Hill v. California, 401 U.S. 797 (1971)). In the instant action, the undisputed summary judgment evidence is that plaintiff's arrest by Arlington officers was based on a warrant issued by Grand Prairie. There is no allegation, or summary judgment evidence, that Arlington was involved in any way in the creation of the warrant. The Arlington officers did no more than to carry out their official responsibilities by executing the arrest warrant. The execution of that warrant did not violate a constitutional right belonging to plaintiff.

The Supreme Court rejected a claim similar to plaintiff's in Baker v. McCollan, 443 U.S. 137 (1979), a case in which the wrong person was arrested and held for "a period of days." In the course of this holding, the Supreme Court explained:

> Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient.

> United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

Id. at 144-45. In Baker, the Supreme Court emphasized that a police official "executing an arrest warrant is not required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent" and that "[t]he ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." Id. at 145-46.

Plaintiff's claim of an unconstitutional strip search fares no better. The Supreme Court made clear in Florence v. Board of Chosen Freeholders, 566 U.S. ___, 132 S.Ct. 1510, 1513 (2012) that "[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in [or] on their bodies." There is nothing in the summary judgment record to suggest that Arlington engaged in any inappropriate conduct in relation to plaintiff when she was required to undress to her underwear in the view of a detention officer and other female

inmates in the process from changing from her street clothes to her jail clothes.

Moreover, even if there were bases for valid constitutional complaint by plaintiff of conduct of Arlington's police officers, Arlington is not vicariously liable under § 1983 for that conduct. Monell, 436 U.S. at 691. For Arlington to be held liable under § 1983 for the conduct of its employees, that conduct would have to be pursuant to policy or custom of Arlington. Id. There is no evidence in the summary judgment record of any such policy or custom.

For the reasons stated above, the court has concluded that Arlington's motion for summary judgment is meritorious.

## VI.

### Order

Therefore,

The court ORDERS that Arlington's motion for summary judgment be, and is hereby, granted and that plaintiff's claims against Arlington be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissal.

SIGNED February 18, 2014.

_____
JOHN McBRYDE
United States District Judge