IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 8 2014

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

SHELIA MOORE,                       §
                                    §
          Plaintiff,                §
                                    §
VS.                                 §   NO. 4:12-CV-624-A
                                    §
CITY OF GRAND PRAIRIE, ET AL.,      §
                                    §
          Defendants.               §

MEMORANDUM OPINION
and
ORDER GRANTING MOTION OF GRAND PRAIRIE, CHASTEEN, AND HINSON

     Before the court for consideration and decision is the

motion for summary judgment of defendants City of Grand Prairie,

Texas ("Grand Prairie"), officer A. Chasteen ("Chasteen"), and

officer Tracy Hinson ("Hinson").  After having considered such

motion, to which plaintiff, Sheila Moore, has not responded, the

summary judgment record, other pertinent parts of the record, and

pertinent legal authorities, the court has concluded that such

motion should be granted.

I.

Background, Nature of the Action, and
Plaintiff's Claims Against Grand Prairie

     This is the fourth opinion the court has issued in the

above-captioned action in response to requests for summary

rulings against plaintiff.  The third was issued, granting the

motion for summary judgment of defendant City of Arlington, Texas

("Arlington"), on the date of the signing of this memorandum opinion and order.  In the opinion issued earlier on this date, the court made reference to, and adopted by reference, the background information contained in opinions issued in this action on March 21 and June 20, 2013.  The court again adopts by reference the contents of those opinions for a more complete statement of the background and nature of this action and the overall nature of plaintiff's claims against the two municipalities and police officers she named as defendants in this action.  The only remaining defendants are the movants, Grand Prairie, and Grand Prairie police officers Chasteen and Hinson.

Plaintiff alleged that Chasteen and Hinson violated her Fourth Amendment rights by causing a warrant to issue for plaintiff's arrest without probable cause, her due process rights under the Fifth and Fourteen Amendments by the manufacturing of evidence and the knowing use of false statements, and her Fifth and Sixth Amendments by failing to notify plaintiff of her rights against self-incrimination and to counsel prior to interrogation. Her claims against Grand Prairie are that Grand Prairie violated her Fourth Amendment rights because it maintained a policy or custom allowing officers to seek felony arrest warrants before the municipal court when the state district court was the court

of original jurisdiction for all felony claims and because the city maintained a policy or custom of allowing the absence of proper training, experience, hiring procedures, supervision, and discipline that led to the intentional withholding of evidence before the magistrate.

By reason of rulings made in the earlier opinions and orders issued in this action, the only claims remaining are plaintiff's Fourth Amendment claims against Chasteen, Hinson, and Grand Prairie.

II.

## Pertinent Facts That Are Undisputed

Undisputed facts in the summary judgment record pertaining to whether Chasteen, Hinson, or Grand Prairie violated plaintiff's Fourth Amendment rights are as follows:

At all relevant times Chasteen and Hinson were employed as police officers, serving as detectives, with the Grand Prairie police department, and were acting in the course and scope of their official duties as police officers.  The warrant for the issuance of plaintiff's arrest was a product of an investigation by Hinson into a series of robberies that occurred in Grand Prairie.  Hinson's investigation culminated in an arrest warrant that was supported by the affidavit of Chasteen on November 16, 2011, which was signed by a judge of the Grand Prairie Municipal

3

Court.  The warrant resulted in the arrest of plaintiff on April 26, 2012, by officers of the Arlington police department.

Hinson started the investigation as the result of a complaint made by a robbery victim ("Victim One") on September 28, 2011, that as she was walking into her apartment breezeway a gray older-model car stopped, and a female in the car got out of the passenger seat of the car, walked up to the victim, and grabbed the victim's purse, causing the victim to fall to the ground.  The robber took from the victim her IPhone in her purse, and some of her debit/credit cards.  Hinson was assigned to the case, and made contact with the victim by telephone on September 30, 2011.  The victim informed Hinson that she had never seen the robber before, that she did not have an "app" to track her IPhone, and that none of her credit cards had been used at that time.  She was told by Hinson to contact Hinson if there was any activity on her credit cards, and she agreed to do so.

On October 30, 2011, Victim One contacted Hinson and informed Hinson that her credit cards had been used four different times on the date of the robbery, and identified the places where they were used.  Hinson contacted each of those locations, and one of them, a Kroger store, had a video of a male and female who were suspects, along with two small children.

4

Hinson obtained still photos of the suspects from the video, and had them sent out on the police list to see if anyone in law enforcement might recognize them.

On October 27, 2011, another victim ("Victim Two") reported that a black female suspect tried to steal her purse as the victim attempted to make her way from the parking lot to her apartment, and that the suspect fled in a dark green, 90's-type Toyota-type car that was being driven by a black male.  Hinson recognized the similarity between the two robberies.  On October 28, 2011, the Grand Prairie police department issued a press release regarding the two similarly related robberies.

On October 31, 2011, Hinson obtained from Victim One the serial number on her IPhone.  Thereafter Hinson discovered that the IPhone had been pawned at a Dallas pawnshop the day after the robbery by a black male named Adrian Brown.  Further research disclosed that Brown was living in Humble, Texas with his wife, a black female named Natasha Brown.  Further investigation by Hinson disclosed that a report had been taken by the Glen Heights police department in October 2011 listing Mr. Brown as a theft suspect living in Desoto.  Hinson contacted the Glen Heights police department, and Hinson learned that Mr. Brown was living somewhere in Desoto.

Hinson then put together a photo lineup that included a
photo of Ms. Brown, and, through another detective of the Grand
Prairie police department, caused the lineup to be presented to
Victim One.  Victim One did not pick anyone out of the lineup as
the woman who robbed her.

Through further investigation, Hinson learned that Mr. and
Ms. Brown had an address listed with Child Protective Services
("CPS") at 1707 Crescent Drive, Desoto, Texas.  Hinson spoke with
a CPS caseworker who had been working a case on Mrs. Brown, and
learned that Mrs. Brown was staying in a woman's shelter with her
three children because Mr. Brown was violent.  The CPS caseworker
provided Hinson a cell phone number for Mrs. Brown, and Hinson
arranged for her to come to the Grand Prairie police department.
When she arrived, Hinson showed her the photos made from the
Kroger store videos.

Ms. Brown said that she did not know who was depicted in the
photos, and informed Hinson that she and Mr. Brown had been
separated for awhile, and that she had not seen him for four
months.  She also advised Hinson that Mr. Brown had a new
girlfriend who also had kids, but that she did not know anything
else about the girlfriend other than that Mr. Brown and the
girlfriend were living together in a trailer park in Desoto.  Ms.
Brown gave Hinson Mr. Brown's current street address, 1309

Dynamic Drive, Desoto, Texas.  By searching that address through Accurint, Hinson found that it was associated with plaintiff, who also used the name Sheila Banks.

Hinson then reviewed plaintiff's drivers license information and photograph, and concluded that her physical description matched that of the robbery suspect and that her hair somewhat matched that of the suspect.  Hinson also learned that plaintiff owned a 2005 green Honda Accord and a 1996 red Honda Accord. Victim One had told Hinson that the suspect's car appeared to be five-seven years old, thus matching plaintiff's 2005 Honda Accord.

Hinson then created another photo lineup, this one containing plaintiff's photo, and arranged to meet with Victim One on November 15, 2011, so that a detective in the Grand Prairie police department could show her the lineup.  When the detective presented the photo lineup, including plaintiff's photo, to Victim One on November 15, 2011, Victim One picked plaintiff's photo as being of the person who robbed her.  Victim One also provided information that the suspect vehicle was a light color--tan or silver gray, older model, four-door Honda Accord--or something similar.

Hinson researched a wrecker driver database and found a photo of plaintiff's vehicle in the system that was taken in a

parking lot, which showed the color of plaintiff's vehicle to be gray or metallic green or silver. Hinson then went to the 1309 Dynamic Drive, Desoto, Texas, address in an attempt to locate plaintiff. Her vehicles were not at that location, and persons were observed moving furniture out of the house.

Hinson relayed the information the officer had obtained during the investigation to Chasteen, and on November 16, 2011, Chasteen swore out a warrant for plaintiff's arrest, and on that date a Grand Prairie municipal judge issued the warrant after determining that probable cause existed for the issuance of the warrant for plaintiff's arrest.

On April 27, 2012, after plaintiff had been arrested by the Arlington police department, they picked plaintiff up at the Arlington police department and took her to the Grand Prairie police department. When Hinson interviewed plaintiff, she admitted that she lived at the trailer in Desoto that the Grand Prairie officers had checked, but had since moved to Glen Heights. She denied knowing Mr. Brown, and said that she was working until 9:00 p.m. every night during the times when the robberies occurred. She said that she was not the person shown in the video from the Kroger store and that she did not have any small children or grandchildren. After interviewing plaintiff, Hinson did not feel comfortable filing a case against her at that

point.  Consequently, Hinson released her from custody shortly
thereafter on April 27, 2012.

### III.

### Grounds of the Motion

The movants assert as to Chasteen and Hinson that neither of
them violated any clearly established constitutional right of
plaintiff and that, in any event, they are entitled to the
benefit of the defense of qualified immunity.  They had probable
cause to secure the arrest warrant in question, with the
consequence that there was no deprivation of plaintiff's Fourth
Amendment rights.  Moreover, the movants alleged, a reasonable
police officer faced with the same circumstances facing Chasteen
and Hinson could have believed that the actions of those officers
about which plaintiff complained were objectively reasonable in
connection with Hinson's investigation into the purse-snatching
robberies.

As to plaintiff's claims against Grand Prairie, the movants
added that plaintiff has adduced no evidence that a policy,
practice, or custom of Grand Prairie caused a deprivation of
plaintiff's Fourth Amendment constitutional rights, even if one
were to assume that such a deprivation occurred.

IV.

## Applicable Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986).

A motion for summary judgment cannot be granted simply because there is no opposition.  <u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360, 362 n.3 (5th Cir. 1995).  When no response is filed, however, the court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when those facts establish a prima facie showing of entitlement to judgment.  <u>See</u> Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).  Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence."  <u>Bookman v. Schubzda</u>, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing <u>Solo Serve Corp. v. Westowne Assocs.</u>, 929 F.2d 160, 165 (5th Cir. 1991).

V.

<u>Analysis</u>

A.   <u>Chasteen and Hinson are Protected by the Doctrine of Qualified Immunity</u>

Chasteen and Hinson, public safety officers, are entitled to assert qualified immunity as a defense.  <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1273 (5th Cir. 1992).  Qualified

11

immunity shields public safety officials when performing
discretionary functions "from civil damages liability as long as
their actions could reasonably have been thought consistent with
the rights they are alleged to have violated." Anderson, 483
U.S. at 638. As the Fifth Circuit explained in Fraire,

> If reasonable public officials could differ on the
> lawfulness of the defendant's action, the defendant is
> entitled to qualified immunity. Thus, even when a
> defendant's conduct actually violates a plaintiff's
> constitutional rights, the defendant is entitled to
> qualified immunity if the conduct was objectively
> reasonable.

957 F.2d at 1273.

A police officer has qualified immunity from civil suit and
liability except where his or her conduct violates "[c]learly
established constitutional rights of which a reasonable person
would have known." Davis V. Scherer, 468 U.S. 183, 191 (1984);
see also, Gibson v. Rich, 44 F.3d 274, 277 (5th Cir. 1995).
Existence of the immunity "turns on whether a reasonable officer
could have believed . . . [his or her actions] . . . to be
lawful, in light of previously established law and the
information the officer possessed." Rich, 44 F.3d at 277. When
an officer asserts the defense of qualified immunity, the
plaintiff has the burden to overcome the defense. Burns-Toole v.
Bynre, 11 F.3d 1270, 1274 (5th Cir. 1994).

The summary judgment record establishes without dispute that Chasteen and Hinson were working in their official capacities as police officers of Grand Prairie when they did the things of which plaintiff complains. As a matter of law the conduct of which plaintiff complains was discretionary conduct on the part of the officers. Thus, plaintiff must show that the actions of the officers resulted in the violation of a "clearly established" constitutional right, see, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and that no reasonable police officer with the same information possessed by the officers would have believed that the actions they took were lawful. See Anderson, 483 U.S. at 641. The test is an objective one, id.; Geter v. Fortenberry, 882 F.2d 167, 169 (5th Cir. 1989), and the decisions of the officers are to be measured by evaluating the facts available to them at the time they took the action about which complaint has been made. See Bennett v. City of Grand Prairie, 883 F.2d 400, 404 (5th Cir. 1989).

Plaintiff's claim that Chasteen and Hinson violated her Fourth Amendment rights by pursuing the issuance of the arrest warrant does not survive the undisputed summary judgment evidence. Probable cause to arrest exists "when the facts and circumstances within the arresting officer's personal knowledge from or of which he has reasonably trustworthy information, are

sufficient to occasion a person of reasonable prudence to believe that an offense has been committed." Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." Hart v. O'Brien, 127 F.3d 424, 444 (5th Cir. 1997). Immunity will be recognized even if probable cause is arguable. See, id.

In evaluating whether the record shows the existence of probable cause, the court examines the totality of the circumstances. See United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999). The "requisite fair probability is something more than a bare suspicion, but need not reach the fifty percent mark." Id. (internal quotation marks omitted).

The facts and circumstances leading to the issuance of the warrant for plaintiff's arrest, as enumerated in a preceding part of the memorandum opinion, establish as a matter of law that Chasteen and Hinson had probable cause to believe that plaintiff was involved in a criminal purse snatching. The decision of the officers to cause the warrant for plaintiff's arrest to be issued was objectively reasonable--it was one that a reasonable officer, faced with the same circumstances, could have reached.

When the undisputed summary judgment evidence is considered, the allegations of plaintiff that the officers used false

14

statements, the testimony of unreliable witnesses, withheld the identity of unreliable witnesses, and contrived unrelated evidence to induce the issuance of the warrant, and that the officers entered plaintiff's photo in a police lineup before the victim in an effort to pin blame on plaintiff despite physical evidence that plaintiff was not involved in the crime, fall by the wayside.  There simply is no summary judgment evidence to support any of those assertions.

For the reasons stated, Chasteen and Hinson are entitled to summary judgment.

B.   The Summary Judgment Record Does Not Establish Any Basis for Liability Against Grand Prairie

To establish liability against Grand Prairie, plaintiff was obligated to prove that a policy, practice, or custom of Grand Prairie caused a constitutional deprivation.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978).  Not only has plaintiff failed to adduce any summary judgment evidence to raise an issue of fact that she suffered a constitutional deprivation, she has failed to adduce any summary judgment evidence of any policy, practice, or custom of Grand Prairie that could lead to a deprivation of her Fourth Amendment constitutional rights.  There is no summary judgment evidence that any of the conduct of the officers about which plaintiff

complains was a product of a policy, practice, or custom of Grand Prairie.

For the reasons stated, Grand Prairie is entitled to summary judgment.

VI.

Order

Therefore,

The court ORDERS that the motion for summary judgment of Chasteen, Hinson, and Grand Prairie be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff against those defendants be, and are hereby, dismissed with prejudice.

SIGNED February 18, 2014.

JOHN McBRYDE
United States District Judge

16